RuffiN, C. J.
 

 Whether the challenges of the jurors for cause were improperly overruled or not, is not material in the present state of the case. For the defendant had a trial by a jury, which he accepted as liable to no objection, without challenging peremptorily, or wishing to challenge more than four, the number he may legally challenge without shewing ány cause. The defendant then could have sustained no injury by the disallowing of his
 
 challenges;
 
 and, upon the principle of
 
 Arthur's
 
 case,
 
 2
 
 Dev. 217, it is not a ground for a
 
 'venire de novo.
 

 The decision of the religious
 
 society
 
 was properly ruled out. It was right to receive evidence, that, according to the discipline of the society, the plaintiff was called to answer before the ecclesiastical tribunal, to which, as a member of the society, he was amenable, because it explained the occasion upon which the defendant made the direct charges of perjury on the plaintiff, in swearing that the defendant owed him for two sacks of salt, sold and delivered to him; whereas the plaintiff had never sold and delivered him any salt. It is well settled, that charging a person
 
 bona fide
 
 with,a ■crime on such an occasion is one of those privileged com
 
 *469
 
 munications, for which the speaker is not responsible. the proceeding is no further evidence than as it shews, that the defendant was called on, in the discharge of a duty to the society, to make his statement upon that occasion, and, therefore, ought not to be responsible for it in damage to the party, more than if he had made it in a court of justice. But the decision, to which the society came, is not relevant to establish the plaintiff’s ■ guilt of the crime imputed, nor the motive of the defendant in making the same charge at a different time, and undér circumstances which did not render it a privileged communication.
 

 . The court is also of opinion, that the testimony of Mr. Haywood was properly received. The conversation between the witness - and the plaintiff and his son Barnes, was competent, as proving the-fact of the agency thereby created for the son, on behalf of his father, to deliver the salt to the defendant. It is true, the son states, that the father .afterwards •remained, until he, the son, had delivered the salt in his presence. But, still, it is material to the disputed allegation of the plaintiff, that he sold and delivered the salt to the defendant, to shew, that he directed his son, as his agent, and then in possession of the salt, to go with it to the defendant’s house and deliver it to him. It'was likewise competent, as tending to sustain the credit of Barnes Whitaker, inasmuch as the witness, Haywood, proved the statement of the other witness to be true, as far as'any of the circumstances came within his knowledge. It created some presumption, that the other circumstances, not known to Haywood, and which he had no opportunity of knowing, but deposed to by Whitaker, were also true. The relation in which -the witness, Barnes Whitaker, stood to the parties to this suit, and especially to the transaction out of which the controversy arose, namely, the alleged sale-and delivery of the ■ salt, in which,' by his own account, he was a participator, so far exposed him to 'suspicion and discreditable observations, as to render it proper in the court to admit evidence, in support of-his .credit, of this kind.
 
 State
 
 v Twitty, 2 Hawks 449. The
 
 *470
 
 whole cause depended on the veracity of that witness, for he &rec^y proved the truth of the oath of the plaintiff, in which it is alleged he committed the perjury. The defend-aQi attemp£e(j
 
 i0
 
 discredit him by the negative
 
 testimony
 
 of Spencer and Beasly. In reply to that, the evidence given by Haywood and Crowder was cogent to the points, both that Whitaker had intended to swear to the truth, and that he had sworn to it
 

 It is next'objected, that the court erred, by instructing the jury, that the words proved by Woodall and Crowder were actionable, as they do not in themselves import a charge of perjury, and the intent, ought
 
 to have
 
 been left
 
 to
 
 the jury. That is precisely what his Honor did. His language'is, that, “
 
 if the
 
 jury were satisfied, that the words, proved by those two witnesses, were spoken,
 
 and
 
 that, under the circumstances, they amounted to a charge of perjury, in swearing that the plaintiff had sold and delivered to the defendant two sacks of salt, then the plaintiff would be entitled to a verdict, unless the defendant had made out his justification.” It is clear, that, what was meant was, that if the jury was satisfied, under the circumstances, that those words, “amounted to,” that is, were intended to convey or express, a charge of perjury, as laid in the declaration, then they should find for the defendant. There is nothing, therefore, in that objection.
 

 But it is further insisted, that the jury ought to have been at liberty to consider, whether the plaintiff was not guilty of perjury in those parts of his oath, in which he stated or is supposed to have stated, that he delivered the salt in December, 1836, and that he could not prove the delivery, except by his own oath — whereas the delivery was in Dec. 1835, and he could have proved the delivery by his own son, Barnes ; and, therefore, that
 
 there
 
 was
 
 error in
 
 confining the jury to the particular imputation of perjury, of which complaint is made in the declaration. We think the position entirely untenable. The declaration lays the speaking of certain words, whereby, as it alleges, the defendant meant to impute ,to
 
 the
 
 
 *471
 
 plaintiff the perpetration of perjury in this, that the plaintiff had sworn that he sold and delivered to the defendant two sacks of salt, which he never did sell or deliver. To that declaration the defendant pleaded, not guilty; and the jury have found, that he did speak the words, and with the intent stated in the declaration. The defendant also pleaded justification, and therein sets forth the oath of the plaintiff to-have been,
 
 “
 
 that the matter in dispute was a book account,- and that the said David Carter was indebted to him the sum of $>14 20 ; and further, that he had no other means to prove the delivery of the two sacks of salt but by his own oath, and that the two sacks of salt were by him delivered to the said David Carter, and charged to him- at the price of $58.” Then the plea proceeds to negative the oath and assign the perjury in these words: ;i Whereas, in truth and in fact the said David Carter, at the time, &c., was not indebted to him the said Samuel Whitaker in the sum of $8, for two sacks of salt, or for any other goods, wares, or merchandise, sold and delivered by the said Samuel to the said David: And whereas,- in truth and in fact, the said David was not then indebted to said Samuel in any sum whatsoever, on any account whatsoever; and the said Samuel did thereby upon' his said oath commit,. &c.” This plea then assigns the perjury in the very point, in which the declaration states the defendant meant to charge it by the words spoken by him. Indeed,- as a justification, the plea could not have been otherwise pleaded, for it would have been no answer to the declaration, since one false charge cannot be justified by proving, the plaintiff to have been guilty of another crime. It is, therefore, admitted at the bar, that the defendant could not, under his plea of justification, have offered evidence, that in another part of this oath the plaintiff committed a perjury, not assigned in the plea; and therefore the jury could know nothing of such supposed perjury. But it was said, that' under the general issue, all the words spoken by the defendant must go to the jury, and if they should believe that any of them were true, it would rebut the inference of malice in
 
 *472
 
 the speaking of the words, and the jury might
 
 find for the
 
 defendant. R would
 
 he
 
 most singular, if that were so. In the first place, it does not appear in this case, that the de-pen<jant evcr charged, in the conversations stated by the witness, that the plaintiff had committed perjury in saying that the delivery was in 1836, or that he could net prove it but by his own oath, ox in any other respect than in swearing, that he had sold him the two sacks of salt, when he did not sell him any. What right, then, could the defendant have to insist, that the plaintiff was guilty of a crime,, which the defendant had not imputed to him, and thereupon claim to be acquitted of speaking words, which he admits he did speak, and which he also admits were false1?
 

 But- if the defendant had charged the plaintiff with a perjury in- each of the three particulars, süll His Honok’s opinion would be perfectly correct, in reference to the question on which it- was given. The question was this; whether the plaintiff’s action would or would not be barred by proof, that the defendant had charged the three perjuries on the plaintiff, and that, as to two of them the charge was true, though the defendant had been unable to prove the particular one, which the plaintiff had declared on? The counsel for the defendant insisted in this Court, that in such a case the defendant was entitled to a verdict; and His IIoNon held the contrary; properly we think.
 

 We admit, that a defendant, in an action for slander or libel, has a right to require, that all he said or wrote should go to the jury, that they may judge of motives, and under all the circumstances assess the proper amount of damages. If the defendant has made divers charges against the plaintiff in the same conversation or publication, and the plaintiff sues for one of them, the other party may call for the context. He does it, necessarily, at a risk, for the jury may think he does it to blacken the plaintiff’s character then without responsibility, and therefore may increase the damages. On the other hand, it is certainly a fair topic of argument to the jury upon the question of damages, that the plaintiff, by
 
 *473
 
 picking and culling among the charges, has been able to get one which the defendant is unable to sustain, and that he re-lios on that alone, and by the admission of the others has not afforded the defendant the opportunity of justifying them on the record and proving them, although, perhaps, such omitted charges may be the most serious of those made, or as grave as that declared on. Such animadversions might be very just in reference to the damages, since one, who sues for his character, ought so to bring his action, as fairly to put it in issue and give the person, who has spoken against it, a full opportunity of justifying all or any part of what he said. And, no doubt, if this defendant had charged on the plaintiff any perjury but that set forth in the declaration, the most would have been made of it on the trial before the jury; and His Honor would, of course, have left that conversation to the jury, as exclusively within their province. But that was not the case on the trial of the present cause. On the contrary, the defendant insisted, that the plaintiff was not entitled to recover at all, although the jurv should find the speaking of the words laid in the declaration, and that they were not true; a proposition, which can never be admitted, while the pleadings of the parties are to have any effect hi fixing the points, on which the cause is to be decided, or in regulating the evidence to be given on the trial. We think, therefore, that there was no error committed on the trial, and that there cannot be a
 
 venire de novo.
 

 There has also been made in this Court a motion in arrest of judgment, for the insufficiency of the declaration. After stating the plaintiff’s good character, and that before the committing of the grievous, &c. a certain plaint had been depending, brought by warrant before a justice of the peace, in, <fcc., wherein the said David was the plaintiff and the said Samuel was the defendant, and which plaint so brought by warrant had been lately tried before, &c. andón said trial the said Samuel had claimed as a set off against the demand, &c., the price of certain articles stated in an account in writing, then produced by the said Samuel, and amongst them two sacks of salt as sold and delivered by the said
 
 *474
 
 Samuel to the said David; the declaration then proceeds as follows: “And whereas,.the said Samuel,
 
 on the said trial
 
 before the said justice of the peace,
 
 mas sworn and did take his corporal oath
 
 before the said justice, and
 
 was on his said oath then examined on the said trial
 
 before
 
 the
 
 said justice, to
 
 prove
 
 among other things, the
 
 sale and delivery of the said two sacks
 
 of salt by the said Samuel to the said David,
 
 according to the provisions of the statute in such case made and provided,
 
 entitled
 
 “ An Act ascertaining the mode of proving debts,
 
 &e.” The declaration then proceeds to state, that the defendant, well knowing the premises, and intending, «fee., in a certain discourse, &c., “ falsely and maliciously spoke and published of and concerning the said plaint by warrant, and of and concerning the examination of the said Samuel
 
 on his said oath on the said trial, to prove the sale and delivery of the said two sacks as aforesaid,
 
 then falsely, &c.” The objection is, that the declaration does not in express terms aver, that on the trial the plaintiff, after being sworn, “ was examined and gave his evidence as a witness, that &c.” Upon looking into the precedents, we perceive that, where there was a trial before a jury it is usual to state, that on the trial the plaintiff was sworn and was examined on oath, and gave his evidence as a witness. 2 Chitty, PI. 621, 637. But the declarations do not set forth what the evidence of the plaintiff was on the trial, or to what particular matter he was examined, but only in general terms that he was examined and gave his evidence. We think to that extent, this declaration must be understood to have the same meaning. To an ordinary reader it would convey the meaning, that the plaintiff
 
 had proved
 
 upon the trial the sale and delivery of the
 
 salt;
 
 though it is not express to that purpose, nor, perhaps, can it necessarily be inferred, as the words are, that the plaintiff
 
 was examined
 
 on the trial to
 
 prove
 
 such sale and delivery. But, as was just observed, the precedents do not state, what the plaintiff did prove or say on his examination, but only that he gave his evidence on the trial, Now, we think that no
 
 one can
 
 
 *475
 
 read this declaration, without understanding that, at the least, the plaintiff gave evidence on the trial of the warrant, and that, if he did not prove the sale and delivery of the salt, yet he was examined as a witness, and gave bis evidence touching the same. At all events, it must have been proved, that the plaintiff did give evidence on the trial of the warrant, else the jury could' not have given the verdict they did, and we see upon the case that, in fact, it was so proved; and therefore, after verdict, the fault, if it be one, is helped, and the judgment is not to be stayed for the omission of a more precise averment. Rev. St. c. 3, s. 5.
 

 Per Curiam, ' Judgment affirmed.